RZEPKA v FARM ESTATES, INC.

Docket No. 77-1314. Submitted March 15, 1978, at Detroit.—Decided June 5, 1978.

Plaintiffs Mitchell and Rita Rzepka, Lyle and Betty Locke and Marvin Hacker filed suit in Macomb Circuit Court against Farm Estates, Inc., R & C Investments, Inc., Louetta Ott, Donald Casterline and Robert Refior alleging violations of Michigan securities law, fraudulent misrepresentation and conspiracy in the sale of stock in defendant Farm Estates, Inc. The trial court, Raymond R. Cashen, J., found that defendant Ott had committed a common-law fraud on plaintiff Mitchell Rzepka in failing to disclose the corporation's true financial condition and in failing to inform Rzepka of the existence of litigation against the company when she sold Rzepka the stock; that commissions had been collected for the sale of the stock, preventing the corporation from claiming a statutory exemption from the registration requirement; that, as a result of the registration requirement and the fact that the stock was not registered, defendants Ott, Refior and Casterline were liable to plaintiffs Rzepka for $20,000 and to plaintiffs Locke for $10,000. Judgment was entered with the amount of liability against these defendants slightly altered and awarding plaintiffs Locke and Rzepka costs and attorney fees. Amended findings of fact holding defendant Farm Estates, Inc., liable on the judgment in favor of plaintiffs Rzepka and Locke and for attorney fees were filed and judgment was entered. Defendants appeal. Plaintiffs Rzepka cross-appeal with respect to the extent of their recovery. *Held:*

1. From the evidence presented at trial the court reasonably concluded: that Farm Estates, Inc.'s, stock had never been registered; that commissions were authorized by the Board of

REFERENCES FOR POINTS IN HEADNOTES

[1] 18 Am Jur 2d, Corporations § 408 *et seq.*

69 Am Jur 2d, Securities Regulation—State §§ 69–78.

[2] 69 Am Jur 2d, Securities Regulation—State § 105.

[3] 19 Am Jur 2d, Corporations §§ 1326–1331.

69 Am Jur 2d, Securities Regulation—State §§ 102, 105.

Directors for the sale of the stock; that the directors had not met their burden of proving they had no knowledge of the failure of registration; and that as officers and directors of Farm Estates, Inc., they were liable to the purchasers.

2. The statute exempting officers and directors of a corporation from liability to purchasers of the company's unregistered stock when the officers and directors had no knowledge of the existence of the facts by reason of which the liability exists does not exempt officers and directors for ignorance of the blue sky laws.

3. A seller's failure to disclose the poor financial status of a corporation to a prospective buyer of stock is adequate to support a claim for common-law fraud.

Affirmed.

1. CORPORATIONS—STATUTES—SECURITIES—REGISTRATION OF SECURITIES—EXEMPTION FROM REGISTRATION.

The statute on registration of securities which exempts certain corporate stock does not apply to stock for which sales commissions were paid and later returned; statutory exemptions are to be given a limited, rather than expansive, construction (MCL 451.802; MSA 19.776[402]).

2. CORPORATIONS—STATUTES—SECURITIES—REGISTRATION OF SECURITIES—OFFICERS AND DIRECTORS—LIABILITY OF OFFICERS AND DIRECTORS—EXEMPTIONS.

A statute holding corporate directors and officers liable to purchasers of stock which is unregistered but exempting those officers and directors who sustain the burden of proving lack of knowledge of the facts by reason of which the liability is alleged to exist does not apply to officers and directors who only prove ignorance of the blue sky laws; ignorance of the law is no excuse (MCL 451.810[b]; MSA 19.776[410][b]).

3. FRAUD—SALE OF CORPORATE STOCK—FAILURE TO DISCLOSE AS REPRESENTATIONS.

Failure of a corporate director, who had a duty of disclosure, to disclose the bleak financial condition of the corporation and existence of pending litigation against it to a purchaser of the director's stock is tantamount to a representation that the corporation is solvent and is sufficient to support an action by the purchaser for common-law fraud.

*William A. Gentz,* for plaintiffs.

*Freud, Markus, Slavin, Toohey & Galgan,* for defendants.

Before: R. M. MAHER, P. J., and V. J. BRENNAN and N. J. KAUFMAN, JJ.

V. J. BRENNAN, J. Plaintiffs brought this action on August 4, 1974, alleging violation of various Michigan security laws, fraudulent misrepresentation, and conspiracy in the sale of stock in Farm Estates, Inc. They sought the return of their investments in this corporation. The case was tried in Macomb County Circuit Court on May 4, 6 and 7, June 29–30, and July 1, 2, 7, 14 and 15, 1976.

In an opinion dated February 14, 1977, Judge Raymond R. Cashen ruled that defendant Ott had committed a common law fraud against plaintiff Mitchell Rzepka in failing to disclose to him the corporation's shaky financial situation and the existence of litigation against it when she sold him $5,000 worth of stock on October 26, 1973. The court also found that commissions had been collected for the sale of stock, which prevented the corporation from claiming a statutory exemption to the registration requirement. MCL 451.802; MSA 19.776(402).

Consequently, the court held defendants Ott, Refior and Casterline liable to plaintiffs Rzepka for $20,000 and plaintiffs Locke for $10,000. A judgment of no cause of action was entered in favor of Farm Estates, Inc. and R and C Investments, Inc. A similar judgment was entered against plaintiff Hacker.

On March 22, 1977, a judgment was entered, altering the amount of liability slightly and also awarding plaintiffs Locke and plaintiffs Rzepka $6,354.76 for costs and attorney fees. On April 11, 1977, amended findings of fact and conclusions of

law were entered, holding that Farm Estates, Inc., was also liable for the $10,000 judgment in favor of Locke, the $20,000 judgment in favor of plaintiffs Rzepka and the award of attorney fees. The individual defendants now appeal as a matter of right. GCR 1963, 806.1. Plaintiffs Rzepka have filed a cross-appeal regarding the extent of their recovery.

Defendants, and plaintiffs on cross-appeal, collectively raise three allegations of error in the trial court's decision. We will deal with only one claim at any length.

Defendants contend the record at trial indicates no proof of their culpable knowledge, even though liability was grounded upon their own act of approving the receipt of commissions for the sale of unregistered stock in violation of MCL 451.701; MSA 19.776(301) and MCL 451.802(b)(9); MSA 19.776(402)(b)(9).

Judge Cashen found defendants' corporation, Ott, Casterline and Refior jointly and severally liable to plaintiffs Rzepka and Locke for the purchase price of the securities which were not registered as required by MCL 451.701; MSA 19.776(301).[1] We agree with the court.

---

[1] This statutory provision reads as follows:

"It is unlawful for any person to offer or sell any security in this state unless (1) it is registered under this act or (2) the security or transaction is exempted under section 402."

The exemptions appear in MCL 451.802; MSA 19.776(402). This provision reads as follows:

"(a) The following securities are exempted from sections 301 and 403:

\* \* \*

"(9) Any transaction pursuant to an offer directed by the offeror to not more than 15 persons, other than those designated in paragraph (8), in this state during any period of 12 consecutive months, whether or not the offeror or any of the offerees is then present in this state, if:

"(A) The seller reasonably believes that all the buyers in this state,

On the basis of the evidence presented, we find Judge Cashen was not in error when he inferred that Farm Estates stock was never registered. Moreover, we find uncontroverted the fact that commissions were authorized by the Board of Directors on March 29, 1971, for the sale of corporate stock and that such commissions were reversed on the corporate books effective April 30, 1973. The reversal occurred only after defendant Ott had met with a representative from the Department of Commerce. We also find that Mrs. Ott received a number of commissions pursuant to this authorization including $4,000 on August 6, 1970, paid to Business Management Consultants, one of Ott's alter-ego corporations, for the sale of stock to Rzepka. Further, Refior testified that he knew of these commissions, and the record is uncontroverted that these commissions were noted in the minutes of the meeting of the Board of Directors on March 29, 1971. At that time, the Board of Directors consisted of Ott, Refior and Casterline.

We also find proper the trial court's conclusion that the corporate stock did not qualify for the exemption under MCL 451.802; MSA 19.776(402), since commissions were paid on the sale of this stock. Further, nothing in the statute leads us to conclude that returning the commissions would have the effect of retroactively placing the stock within the exemption for the period in which such commissions were collected. Statutory exceptions are to be given a limited, rather than expansive

other than those designated in paragraph (8), are purchasing for investment; and

"(B) No commission or other remuneration is paid or given directly or indirectly for soliciting any prospective buyer in this state, other than those designated in paragraph (8); but the administrator may by rule or order, as to any security or transaction or any type of security or transaction, withdraw or further condition this exemption, or increase or decrease the number of offerees permitted, or waive the conditions in clauses (A) and (B) with or without the substitution of a limitation on remuneration."

construction. *Lee v J H Lee & Son,* 72 Mich App 257, 260; 249 NW2d 380 (1976), *Northville Coach Line, Inc v Detroit,* 379 Mich 317, 329; 150 NW2d 772 (1967) (plurality opinion). Moreover, the narrow view we take here is consistent with the statutory purpose of protecting the public. *People v Dempster,* 396 Mich 700, 707–708; 242 NW2d 381 (1976).

We also find reasonable Judge Cashen's conclusion that Ott received commissions on all sales made during the period in which such commissions were authorized, including: the sale on October 14, 1972, of $20,000 worth of stock to Rzepka and the sale on November 1, 1972, of $10,000 worth of stock to Locke. This conclusion is supported by Ott's admissions as to the receipt of commissions throughout the period and the existence of a commission check of $4,580 for the sale of stock to several persons whose names could not be recalled at trial. Evidence also appears that Ott received a commission in connection with the August 5, 1970, sale of stock to Rzepka, although commissions were not authorized at that time.

Consequently, we find that the sales of stock to Rzepka on August 5, 1970, and October 14, 1972, and the sale of stock to Locke on November 1, 1972 were in violation of MCL 451.701; MSA 19.776(301) and that plaintiffs Rzepka and Locke maintain a valid cause of action against defendants under MCL 451.810(a)(1); MSA 19.776(410)(a)(1).[2]

---

[2] This statutory provision states in pertinent part:

"(a) Any person who:

"(1) Offers or sells a security or commodity contract in violation of section 201(a), 301, or 405(b), or of any rule or order under section 403 which requires the affirmative approval of sales literature before it is used, or of any condition imposed under section 304(d), 305(f), 305(g), or 412(g)

\* \* \*

Having established defendant's liability as seller under MCL 451.810(a)(1); MSA 19.776(410)(a)(1), we further affirm the court's finding of liability as to the individual defendants predicated upon MCL 451.810(b); MSA 19.776(410)(b).[3]

The trial court concluded that "no proof" was advanced to bring the knowledge exception of this section into play. Although this characterization may be extreme, we do hold that the individual defendants have failed to meet their burden of proof under the statute. We find clear the fact that Ott, Casterline and Refior all knew about the commissions which were authorized by them in their positions as members of the Board of Directors. Testimony also appears supporting the proposition that Ott and Casterline knew the stock had not been registered. Although no evidence exists that Refior knew of the stock's unregistered status, likewise no evidence appears that he "could not

"Is liable to the person buying the security or commodity contract from him, who may sue either at law or in equity to recover the consideration paid for the security or commodity contract, together with interest at 6% per year from the date of payment, costs and reasonable attorneys' fees, less the amount of any income received on the security or commodity contract, upon the tender of the security or commodity contract, or for damages if he no longer owns the security or commodity contract. Damages are the amount that would be recoverable upon a tender less the value of the security or commodity contract when the buyer disposed of it and interest at 6% per year from the date of disposition." MCL 451.810(a)(1); MSA 19.776(410)(a)(1).

[3] This statutory provision states in relevant part:

"(b) Every person who directly or indirectly controls a seller liable under subsection (a), every partner, officer, or director of such a seller, every person occupying a similar status or performing similar functions, every employee of such a seller who materially aids in the sale, and every broker-dealer or agent who materially aids in the sale are also liable jointly and severally with and to the same extent as the seller, unless the nonseller who is so liable sustains the burden of proof that he did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist. There is contribution as in cases of contract among the several persons so liable." MCL 451.810(b); MSA 19.776(410)(b).

have known" of this fact. Since the individual defendants have clearly failed to establish their lack of knowledge, actual or constructive, we find them liable under MCL 451.810(b); MSA 19.776(410)(b) in their positions of directors and officers of the corporation. Their ignorance of blue sky laws is irrelevant for purposes of this statute, as the exception only speaks of the lack of knowledge of "the existence of the facts by reason of which the liability is alleged to exist". Clearly, under the statute, ignorance of the law is no excuse. See *Cola v Terzano,* 129 NJ Super 47; 322 A2d 195 (1974). See, also, Anno: *What Amounts to Participation by Corporate Officer or Agent in Illegal Issuance of Security in Order to Impose Liability upon Him Under State Security Regulations,* 44 ALR3d 588.

We therefore sustain the trial court in granting Rzepka judgment for $20,000 plus interest and Locke judgment for $10,000 plus interest. We find that plaintiffs were entitled to the return of their purchase price. Clearly, they filed suit within two years of the purchase and did not refuse any prior offers or reimbursement.[4] As to the remaining claims, we address them only briefly.

Defendants claim the trial court erred in finding either common-law or statutory fraud based on Ott's sale of stock to plaintiff Locke without disclosing to him the existence of pending litigation or the corporation's poor financial condition.

The trial court found that Ott committed common-law fraud in selling $5,000 worth of her stock

---

[4] We perceive no grounds to exempt defendants concerning the sales to Rzepka and Locke on October 14 and November 1, 1972, under the limitations provision of MCL 451.810(b); MSA 19.776(410)(b). The present action was brought on August 4, 1974. Nor do we find evidence of a written offer to refund the purchase price and interest which would bar suit under MCL 451.810(e); MSA 19.776(410)(e).

to Locke on October 26, 1973. The record supports the court's finding of fraud. See *Hi-Way Motor Co v International Harvester Co,* 398 Mich 330, 336; 247 NW2d 813 (1976). Specifically, Ott's failure to disclose the bleak financial position of the corporation constitutes adequate support for the action. An affirmative misrepresentation of one's financial condition has been held adequate in such cases. *First State Savings Bank v Dake,* 250 Mich 525; 231 NW 135 (1930).

Consequently, assuming Ott had a duty of disclosure as seller, that duty should encompass disclosure of the corporation's poor financial status. Failure to disclose these facts under the circumstances of this case is tantamount to a representation that the corporation was solvent. Such representation was clearly false; and Ott, as director, officer and creditor of the corporation, obviously knew the representation was false. Such a misrepresentation is clearly material as bearing upon a fact crucial to Locke's decision to buy. *Papin v Demski,* 17 Mich App 151, 155; 169 NW2d 351 (1969), *aff'd* 383 Mich 561; 177 NW2d 166 (1970). We find reliance here where the facts not disclosed are of the sort that would have induced plaintiff not to have acted had he known of them. The corporation's dire financial condition clearly qualifies under such a test. The trial court reached the correct decision. We find no error.

Plaintiff Rzepka on cross-appeal contends the trial court improperly denied him recovery of the purchase price of the stock he bought in August, 1970, despite the fact that (1) no fiduciary relationship existed between Rzepka and Ott, (2) an action based upon MCL 451.810(a)(2); MSA 19.776(410)(a)(2) was barred by a statute of limitations and (3) plaintiffs have not proven the exis-

tence of material misrepresentation or the nondisclosure of facts which would have affected plaintiff's decision to purchase the stock.

The trial court found that plaintiff's action for statutory fraud was barred by the statute of limitations and that plaintiff's theory based upon common-law fraud and breach of fiduciary duty were without merit. We agree.

This action was filed on August 4, 1974. The alleged fraud occurred four years previously. MCL 451.810; MSA 19.776(410) provides in part:

"(e) No person may sue under this section more than 2 years after the contract of sale. No person may sue under this section (1) if the buyer received a written offer, before suit and at a time when he owned the security or commodity contract, to refund the consideration paid together with interest at 6% per year from the date of payment, less the amount of any income received on the security, and he failed to accept the offer within 30 days of its receipt, or (2) if the buyer received such an offer before suit and at a time when he did not own the security or commodity contract, unless he rejected the offer in writing within 30 days of its receipt."

Consequently, plaintiff's action is barred since the case was commenced more than two years from the date of the sale. We find no merit to plaintiff's claim and sustain the trial court.

Having reviewed each of the claims of defendants and plaintiffs, we affirm the decision of the trial court.

Affirmed. Neither side to be assessed costs.